UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARY A DULIN,

     Plaintiff,

     v.                         Case No. 3:19-CV-358-MCR-HTC

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court pursuant to 42 U.S.C. § 1383(c)(3) for review of the final determination of the Commissioner of Social Security ("Commissioner")[1] denying Mary A. Dulin's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 U.S.C. §§ 1381-83.[2]  Dulin's complaint was referred to the undersigned for a report and recommendation to the District Judge.  Based on an independent review of the record, the undersigned finds that the Administrative Law Judge's ("ALJ") denial of

---

[1] Andrew Saul is now the Commissioner of Social Security and the clerk will be directed to substitute Saul for Nancy A. Berryhill as the Defendant.  *See* Fed. R. Civ. P. 25(d).

[2] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for SSI benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

benefits is supported by substantial evidence and, thus, recommends the Commissioner's decision be AFFIRMED.

## **PROCEDURAL HISTORY**

On February 8, 2017, Dulin filed applications for DIB and SSI claiming disability beginning October 1, 2016, for fibromyalgia, neck and back injuries, cyst on head, and hair falling out.  Tr. 378-444.[3]  The Commissioner denied the applications initially and on reconsideration.  Tr. 287-88, 317-18.  After a hearing on June 19, 2018, the ALJ found Dulin not disabled under the SSA.  ECF Doc. 1 at 13-25.  Dulin was not represented at the hearing and chose to proceed with the hearing without counsel, after being advised of her rights.  Tr. 162-163.  The Appeals Council denied a request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner.  Tr. 23-24.

On February 7, 2019, Dulin filed a *pro se* Complaint for Review of Adverse Social Security Decision ("Complaint") with this Court.  ECF Doc. 1.  Dulin also submitted a 6-page memorandum in support of her Complaint.  ECF Doc. 17.  The Commissioner filed his memorandum on August 5, 2019.  ECF Doc. 18.

---

[3] "Tr. _" refers to the consecutively numbered pages of the "Court Transcript Index" submitted by the Commissioner with his answer.

## **STANDARD OF REVIEW**

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). "Even if the evidence preponderates against the [Commissioner], [the court] must affirm if the decision is supported by substantial evidence." *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Additionally, the federal court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court, however, may not look "only to those parts of the record which support the ALJ[,]" but also "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Eligibility for SSI or DIB requires that the claimant be under a disability. The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To qualify as a disability, the physical or mental impairment must be so severe the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the SSA applies the following five-steps: (1) whether the claimant is performing substantial gainful activity, (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform her past work and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs in the national economy the claimant can perform. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 870 (11th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

## THE ALJ's FINDINGS

The ALJ made the following relevant findings supporting his denial of benefits:

• Dulin the following severe impairments: degenerative disc disease, lumbar spine; lumbar somatic dysfunction; obesity; and plantar fasciitis, bilateral. Tr. 145.

• Dulin does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, subpart P, Appendix I. *Id.* at 146.

• Dulin has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb stairs but never climb ladders.[4] She can occasionally balance, stoop, kneel, crouch, and crawl. She can tolerate occasional exposure at work to extreme heat, extreme cold, vibration, and hazards. *Id.*

• Dulin is capable of performing past relevant work as a Driver, Medical Records Clerk, Group Home Worker Supervisor and Resident Supervisor. *Id.* at 152. Additionally, considering the Dulin's age, education, work experience and

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 CFR 404.1567(b) and 416.967(b).

residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that the claimant can perform.  *Id.* at 154.

## FACTUAL BACKGROUND AND MEDICAL HISTORY

Dulin was 53 years old at the time of the hearing.  Tr. 166.  She was 224 pounds and 5'1 1/2" tall.  Tr. 167.  She is single and has two grown children.  At the time of the hearing, she was living with her daughter and her daughter's husband because Dulin could not afford her own rent.  Tr. 169.  She obtained a high school diploma online through Christian Cornerstone.  Tr. 170.

Also, at the time of the hearing, Dulin was working as a driver for Uber and Lyft.  *Id.*  Dulin went from working 60-70 hours when she started driving two years prior to the hearing to working 13 hours.  *Id.*  She worked six hours the weekend before the hearing.  *Id.*  Additionally, although she assists riders with their luggage, she will ask the rider to help her because it is difficult for her to lift.  Tr. 175.  She does not lift more than 20 pounds, and will sometimes lift more than 10 pounds.  *Id.* Dulin's past jobs include employment at Manchester County Rural Health Services for 4 1/2 years as a medical records specialist II (*Id.* at 176, 179); brief periods at a doctor's office; at Salvation Army as a housing monitor; and at Youth for Christ, as a director for teen moms.  Tr. 176, 180.

Dulin complained of the following issues:  endometriosis, irritable bowel syndrome, fibromyalgia, chronic fatigue, plantar fasciitis.  Tr. 181.  Because of these

issues, Dulin's whole body is in pain and she stays in bed most of the time.  Tr. 185, 186.  She also finds herself falling and tripping a lot.  Tr. 185.  Despite these complaints, however, Dulin does not use any kind of support or assistive device other than a boot for her plantar fasciitis.  *Id*.  Dulin also does not require assistance with her daily living activities and testified that she sometimes cooks, does laundry, goes to church, drives from Panama City to Sarasota to visit friends, goes to the movies and goes grocery shopping.  Tr. 186.

With regard to medications, Dulin took Prozac for the fibromyalgia but stopped two weeks before the hearing because it was causing her to break out in a rash.  Tr. 183.  She was also taking Meloxicam, but stopped that medication for the same reason.  Tr. 184.

## ISSUES ON APPEAL

In Dulin's memorandum, she raises the following issues on appeal:[5]

(1)    The ALJ did not make an informed decision because the "right documentation was left out of the records and wasn't available," and there was no research done before the decision "because of a shortage of workers."  ECF Doc. 17

---

[5] Dulin also argues, in conclusory fashion, that her civil rights were violated because she was given inconsistent information.  Dulin provides no details to support this argument.  She does not identify the alleged misrepresentations, who made them or how they adversely affected her.  She did not raise this claim to the ALJ or the Appeals Council.  This argument, therefore, does not merit consideration.  Similarly, Dulin argues that she had no gainful employment and that the SSA failed to get her taxes, which would have confirmed same.  This argument is of no consequences because although the ALJ found that Dulin had substantial gainful employment since her onset date, he nonetheless proceeded with the remaining steps of a disability analysis.  Tr. 145.

at 2.  Additionally, Dulin's medical records support a finding of disability.  ECF Doc. 17 at 4.

(2)    The ALJ failed to consider the side effects of Dulin's medication as it was not mentioned in the ruling or during the hearing.  ECF Doc. 17 at 3.

(3)    The vocational witness, Steve Cosgrove, was not qualified to make a medical diagnosis.  *Id.*

## ANALYSIS

### A. The ALJ's Decision is Supported by Substantial Evidence

Dulin seeks reversal of the ALJ's decision on the grounds that the ALJ failed to consider the "right documentation" and that her medical records support a finding of a disability.  As stated above, the ALJ found that Plaintiff suffered from the following severe impairments:  degenerative disk disease, lumbar spine, lumbar somatic, dysfunction, obesity, and plantar fasciitis (bilateral).  The ALJ further determined that Dulin's medically determinable impairments could reasonably be expected to cause Dulin's alleged symptoms.  The ALJ concluded, however, that despite these impairments, Dulin is not disabled because she has the RFC to perform her past work and also to perform other work that exists in significant numbers in the national economy.

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is where the rubber meets the road.  At that point, the ALJ formulates

the all-important residual functional capacity. Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity. The ALJ establishes residual functional capacity utilizing the impairments identified at step two by interpretation of (1) the medical evidence and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five. "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations." 20 CFR § 404.1545(a)(1). Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

For the reasons set forth below, the undersigned finds the ALJ's decision to be supported by substantial evidence.

### 1. The Medical Records

As stated above, the ALJ determines a claimant's RFC by considering the medical evidence and the claimant's subjective symptoms. Although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. *See Gonzalez v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

Dulin provided her medical records from 1998 to May 2018. The ALJ considered the records from 2016 forward, finding that records prior to 2016 were too remote in time. Tr. 148. Nonetheless, the ALJ considered Dulin's older medical records for context and history. *Id.* The undersigned has independently reviewed those records and determined that the medical records support the ALJ's disability determination.

Dulin's medical records in 2014 show that her gait and station were appropriate and she exhibited normal range of motion and strength in her right and left lower extremities. Tr. 750. On March 10, 2014, Dulin was admitted to Manatee Memorial Hospital for back pain. Tr. 662. A physical examination of her back revealed some tenderness but no swelling, step-off or vertebral tenderness. *Id.* at 663. A physical examination of her neurological areas indicated her motor strength was "equal bilaterally," her extremities were "normal to touch," and her reflexes, speech and gait were normal. *Id.* An x-ray was taken of her lumbar spine, which detected "no acute changes." *Id.* at 664. However, "mild hypertrophic changes" were noted at L3-4 "with slight interval progression." *Id.* She was prescribed Ultram and Flexeril and released. *Id.* at 665.

On August 27, 2014, she was admitted to Manatee Memorial Hospital for abdominal pain. Tr. 649. A review of her systems was negative for any symptoms. *Id.* An ultrasound was performed on her abdomen and pelvis, which revealed "no

apparent cause of acute pain" (*Id.* at 653); was "unremarkable" for her lung bases, liver, spleen, pancreas, gallbladder, adrenal glands and kidneys; showed "no adenopathy or ascites"; and showed her peritoneal surfaces and upper abdominal bowel loops were "within acceptable limits." *Id.* at 660.

On September 4, 2014, Dulin returned to Manatee Memorial Hospital after reportedly passing a kidney stone and complaining of continuous right flank pain to right groin area and nausea. Tr. 636. A review of her systems was negative for any symptoms. *Id.* Her physical examinations were also normal and showed "no tenderness" in the neck area or chest wall. *Id.* at 637. She was also "alert and oriented to person, place, time and situation," with "no focal neurological deficit observed." *Id.* A CT of her abdomen and pelvis showed "no obstructive uropathy." *Id.* at 640.

On October 11, 2014, she was admitted to Manatee Memorial Hospital for an onset of right-sided back pain. Tr. 624. She reported the pain as severe. However, a CT of her abdomen and pelvis revealed "no apparent cause of acute pain." *Id.* at 627. Additionally, there was "no focal inflammatory change," "no adenopathy or ascites" and her bladder, uterus and adnexa, rectosigmoid, pelvic sidewalls, ischiorectal fossae and groins were all "unremarkable." *Id.* at 633.

A review of Dulin's medical records from East Manatee Family Healthcare from December 2015 to February 2017, show that in March and early April 2016,

Dulin complained of lower back pain. Tr. 692-719. This pain was treated with chiropractic manipulations and medication. *See id.* During those visits, Dulin's gait was within normal limits and she reported maintaining regular duty work. *See id.* Although Dulin continued to see doctors at East Manatee, she did not report lower back pain after April 2016. She was also treated at East Manatee for plantar fasciitis. Tr. 692, 698.

On August 29, 2016, Dulin was admitted to Manatee Hospital for a lump on her scalp and her hair falling out. Tr. 616. A review of her symptoms was negative other than for headaches and dizziness. *Id.* Despite the reports of headaches and dizziness, her physical exams were normal, including her back, musculoskeletal and neurological exams. *Id.* Additionally, a CT was taken of her head, which showed "no evidence of an acute intracranial process" and was within "normal limits." *Id.* at 618. There was "no evidence of extra-axial hemorrhage" and scalp was "unremarkable." *Id.*

Dulin's records between August 2016 and February 2017 also did not reveal any mobility issues or limitations. On August 31, 2016, Dulin visited Dr. Bollegraf for follow-up diet advice and complaints of migraines. Tr. 683. At that time, she reported no weaknesses or numbness, no chest pain, no arm pain on exertion, no abdominal pain, no muscle aches, no muscle weakness and no fatigue. *Id.* at 686. Her physical examination revealed she was ambulating normally, had normal mood

and affect, was active and alert, had normal tone and motor strength, had normal movement of all extremities and had normal gait and station. *Id.* at 686. A CT of her head showed "no evidence of acute intracranial process." Tr. 735.

On October 12, 2016, Dulin went to Dr. Bollegraf for a follow up visit for migraines and sharp pain in her back. Tr. 677. She reported no muscle weakness, no weakness and no fatigue. *Id.* at 681. Her physical examination revealed that she was ambulating normally, had normal tone and motor strength, normal movement of all extremities and normal gait and station. *Id.* In February 2017, Dulin went to Dr. Bollegraf for a checkup. She was ambulating normally. Tr. 670. Her motor strength and tone were normal. Dr. Bollegraf noted "questionable classical fibromyalgia trigger points." *Id.* at 671. Her gait and station were normal. *Id.* She was told to return in a month. *Id.* at 672.

Similarly, Dulin's records after 2017, also do not support any limitations on Dulin's mobility. Her primary complaints in 2017 were for a removal of a cyst on her head, which she contended caused headaches and back pain. The records from March 2017 until September 2017, however, show that her gait and station were normal; she was ambulating normally; and her motor strength and tone were normal, although she did have "questionable classical fibromyalgia trigger." Tr. 882-83, 921, 1038. She reported no muscle ache weakness, no joint pain, no fatigue and no back pain. Tr. 879, 898, 915. On March 20, 2018, Dulin went to Hope Medical

Clinic, Inc., for "multiple vague complaints." Tr. 1044. She advised medical providers that she was in the process of filing for disability and had a form she needed completed. A follow-up appointment was scheduled for March 28, 2018. *Id.*

Records for that March 20, 2018 visit show that Dulin's active range of motion was normal for flexion, extension and rotation. Tr. 1026. Her hamstring strength was normal, and she had no quadricep weakness on her right or left side. Tr. 1027. In May 2018, she had another visit at Hope Medical Clinic, this time complaining of "pain all over." Tr. 1058. The records indicate that "her history does not really lead to any particular diagnosis," that "patient jumps and 'twitches' at even contact however light it is way out of proportion to pressure applied," and that there was "no abnormal swelling seen in right lower leg just below knee where patient indicated swelling was." Tr. 1059. She was directed to return to the office in July. *Id.* In May, a CT of her head was performed at Sacred Heart which showed "no acute intracranial findings." Tr. 1068.

The ALJ's determination is also supported by the opinion of state agency physician, Dr. Lauren Bridge. Dr. Bridge reviewed Dulin's medical records at the reconsideration stage of her disability application and determined that Dulin's statements regarding the severity of her impairment were only partially credible, primarily because they were inconsistent with her ADLs. Tr. 298. Dr. Bridge

determined that Dulin's impairments limited Dulin to the following: lifting 20 pounds occasionally; lifting 10 pounds frequently; standing for 6 hours in an 8-hour day and sitting for 6 hours in an 8-hour day.  Tr. 299.

Under the regulations and case law, an ALJ may rely upon, and must consider, the opinions of state agency consultants.  See 20 C.F.R. § 404.1527(e)(2); *see also Voronova v. Astrue*, 2012 WL 2384414, *4 (M.D. Fla. 2012) (acknowledging that ALJ is required to consider opinions of non-examining state agency medical and psychological consultants.).   Although not bound by such opinions, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [claimant is] disabled . . . ."  20 C.F.R. § 404.1527(e)(2)(i).

When considering the findings of a state agency medical or psychological consultant, the ALJ will look to factors "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  The ALJ determines the weight afforded to consultants and, if the ALJ affords controlling weight to such a consultant, rather than to a treating source, the ALJ must explain the weight given to such opinion, just as with other medical sources.  *Id.*  The

regulations provide that agency medical and psychological consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *Id.* Acknowledging this expertise, the Eleventh Circuit explains that, in a proper case, the ALJ does not err by giving substantial weight to the opinions of non-examining physicians, including state agency medical and psychological consultants. *See Milner v. Barnhart*, 275 Fed. Appx. 947, 948 (11th Cir. 2008).

Here, the ALJ assigned significant weight to Dr. Bridges' opinion. Dr. Bridges' opinion is supported by the objective medical evidence in the record, set forth above. Moreover, the record is devoid of any opinions from a treating or other physician to the contrary. In fact, on August 15, 2017, Dulin was given a medical excuse note from Nurse S. Durden at Hope Medical stating that she was being treated for fibromyalgia, IBS, migraines and plantar fasciitis, and that she should be assigned to "light duty work" pending further evaluation and treatment. Tr. 996. Although Dulin argues in her memorandum that the ALJ ignored certain records from her treating physicians, none of Dulin's physicians placed any limitations on Dulin's mobility or ability to function. The records Dulin relies upon show that Dulin has been diagnosed with the same impairments the ALJ considered to be severe. Those records, however, are not contrary to the ALJ's findings that Dulin has the RFC to perform a reduced range of light work.

2.  Dulin's Subjective Symptoms

As stated above, the second part of the RFC analysis is Dulin's subjective symptoms.  The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through [her] . . . own testimony of pain or other subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Stewart v. Astrue*, 551 F. Supp. 2d 1308, 1319 (N.D. Fla. 2008) ("Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.") (citing S.S.R. 96-8p).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt*, 921 F.2d at 1223 (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

A reversal is warranted if the ALJ's decision contains no evidence of the proper application of the three-part standard.  *See Holt,* 921 F.2d at 1223; *see also Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991)  However, the ALJ does not have to recite the pain standard word for word; rather, the ALJ must make

findings that indicate that the standard was applied. *Cf. Holt,* 921 F.2d at 1223; *Brown*, 921 F.2d at 1236.

Additionally, when a claimant testifies to subjective complaints of pain, the ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). The reasons articulated for disregarding the plaintiff's subjective testimony must be based on substantial evidence. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). An ALJ is "not required to accept the claimant's subjective complaints without question" but, instead, "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Grenier v. Astrue*, 606 F.3d 46, 49 (2nd Cir. 2010).

When a claimant establishes a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms complained of, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the symptoms on the claimant's capacity for work. *See Qualls v. Astrue*, 428 F.

App'x 841, 845 (10th Cir. 2011). Factors the ALJ may consider in assessing a claimant's complaints include "the levels of her medication and its effectiveness, . . . the frequency of her medical contacts, the nature of her daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id.*; *see also* 20 C.F.R. § 416.929.

Here, the ALJ found a lack of objective medical evidence to confirm the severity of Dulin's alleged pain. Specifically, the ALJ determined that Dulin's statements concerning the intensity, persistence and limiting effects to be inconsistent with the medical and other evidence in the record. ECF Doc. 1 at 19. Based on the medical records set forth above, in Section A.1., the undersigned finds the ALJ's assessment of Dulin's complaints is supported by substantial evidence.

The ALJ also correctly determined Dulin's subjective statements concerning her pain is inconsistent with her daily activities. At steps 4 and 5 of the evaluation process it is appropriate for the ALJ to consider a plaintiff's daily activities. *See Macia v. Bowen*, 892 F.2d 1009, 1012 (11th Cir. 1987). According to Dulin, she works as a driver for Uber and Lyft; travels to Sarasota on a periodic basis to visit her friends; and is able to cook, do laundry, go to the movies, go grocery shopping and otherwise live independently. These daily activities are inconsistent with her statements of pain. *See, e.g., Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir.

2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends"). Moreover, Dulin does not require any assisted devices, other than a boot, for her mobility.

### B. The ALJ Considered the Side Effects of Dulin's Medications

In one sentence of Dulin's supporting memorandum, Dulin contends the ALJ "never considered the side effect of my medications, nor was it ever mentioned when I went to court, nor in the ruling." ECF Doc. 17 at 3. Dulin's argument has no merit. She provides no explanation about how such consideration would have affected the ALJ's decision. Moreover, the ALJ specifically referenced Dulin's medications throughout his opinion, including noting that Dulin takes Prozac for fibromyalgia, which she stopped taking because it was making her break out in a rash. ECF Doc. 1 at 19. The ALJ also noted that Dulin takes Benadryl, but that it makes her sleepy. *Id.*

Additionally, although Dulin testified that she stopped taking Prozac two weeks prior to the hearing before the ALJ, there is no evidence regarding whether her conditions worsened during those two weeks because she was off that particular medication. Indeed, the record is devoid of any evidence that Dulin discussed the side effect with her physician or requested a change of medication. Thus, even had the ALJ not considered the side effects, which he did, such disregard would not be an error in this particular case. *See Richmond v. Shalala*, 22 F.3d 1441, 1443 (8th Cir. 1994).

### C. Cosgrove Was Qualified to Testify As A Vocational Expert.

Dulin argues in her memorandum that Cosgrove is not a medical doctor and therefore is not qualified to make a medical diagnosis of what she is capable of doing. ECF Doc. 17 at 3. This argument also has no merit. First, Stephen Cosgrove did not provide any medical opinions. He did not provide any medical opinions regarding Dulin's conditions or offer any opinions regarding her limitations. Dulin's RFC was determined by the ALJ. Instead, Cosgrove simply provided an opinion regarding the available jobs in the national market for a person with Dulin's limitations and RFC. Moreover, during the hearing, Dulin was specifically asked whether she had any objection to Cosgrove's qualifications to testify as a vocational expert and she responded that she does not. Tr. 192.

## <u>CONCLUSION</u>

Based on the above, the undersigned finds the ALJ's disability determination was supported by substantial evidence and recommends the decision be affirmed.

Accordingly, it is ORDERED, that the clerk is directed to substitute Andrew Saul for Nancy A. Berryhill as the Defendant. *See* Fed. R. Civ. P. 25(d).

Additionally, it is respectfully RECOMMENDED that:

1.     The decision of the Commissioner be AFFIRMED and Dulin's applications for Supplemental Security Income and Disability Insurance Benefits be DENIED.

2.     The clerk be directed to enter judgment in favor of the Commissioner and close the file.

DONE AND ORDERED this 2nd day of January, 2020.


/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**



## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and**

recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.